GORDON HENRY RAGLER *v.*
STATE OF MARYLAND

[No. 863, September Term, 1972.]

*Decided August 15, 1973.*

The cause was argued before MORTON, MOYLAN and GILBERT, JJ.

*Michael I. Gordon* for appellant.

*Arrie W. Davis, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County*, and *John Hanson, Assistant State's Attorney for Baltimore County*, on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Gordon Henry Ragler, was convicted in the Circuit Court for Baltimore County by Judge Walter R. Haile, sitting without a jury, of two charges of armed robbery. Upon this appeal, he raises three contentions:

(1) That the court erroneously permitted an impermissibly suggestive in-court verification of an earlier pretrial photographic identification;

(2) That the evidence was legally insufficient to sustain the convictions; and

(3) That the trial court abused its discretion in failing to grant a new trial.

Martin Louis Bees and Neil Stephen Lenhart were the victims of the armed robbery that occurred at Eddie's Esso Station on the Baltimore National Pike on May 30, 1972. Sgt. Walter Guraleczka, shortly thereafter, displayed 11 photographs to each victim separately. Each selected the photograph of the appellant. The appellant now does not contend that that pretrial photographic viewing was impermissibly suggestive with respect to either victim. His only complaint is that when the victims took the witness stand, they were asked to look again at the group of 11 photographs and to select the one which they had selected on the earlier occasion. He claims that this procedure was impermissibly suggestive in that the photograph of the appellant was on top of the deck. The short answer to this contention is that the appellant did not object to the in-court testimony and that there is, therefore, nothing before us for review. Maryland Rule 1085. We note, moreover, that the in-court testimony was not a fresh selection but a mere verification of a selection which had been made at an earlier date. The *Wade-Gilbert-Stovall* rules he attempts to invoke are totally inappropriate under these circumstances.

A legal extrajudicial identification, in person or by photograph, of the perpetrator of a crime by an eyewitness to that crime is evidence legally sufficient to sustain a conviction, when the person who made that identification is present in court and where the fact of that identification is appropriately established on the trial record. *Johnson v. State*, 18 Md. App. 571.

The appellant actually made two motions for a new trial. We will consider only the first of these, since we hold that the second was premature and, therefore, a nullity. The guilty verdict in this case was handed down on September 22, 1972. The first motion for a new trial under Maryland Rule 759 was timely filed. A hearing was had on that motion and it was denied on October 6, 1972. On October 16, 1972, the appellant filed a second motion for a new trial under

Maryland Rule 764. A hearing on that motion was commenced on October 25 and was continued until November 27. On November 27, the motion was denied. The appellant was thereafter sentenced. Maryland Rule 764 is concerned primarily with the revisory power possessed by a court over its sentences and other judgments. Section b deals with the time for the modification or reduction of a sentence. Subsection b 3 "Newly Discovered Evidence" provides:

> "The court may, pursuant to a motion filed within the time set forth in subsection 1 of this section, grant a new trial or other appropriate relief on the ground of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under section a of Rule 759 (Motions After Verdict)."

The time set forth in subsection 1 is very specific:

> "For a period of ninety (90) days after the imposition of a sentence, or within ninety (90) days after receipt by the court of a mandate issued by the Court of Appeals or the Court of Special Appeals upon affirmance of the judgment or dismissal of appeal, or thereafter, pursuant to motion filed within such period, the court shall have revisory power and control over the judgment or other judicial act forming a part of the proceedings."

Since the motion in this case was made and the hearing on that motion was held prior to the imposition of the sentence, it was not authorized by Maryland Rule 764 and must be considered a nullity. See *Jones v. Warden*, 11 Md. App. 343, 274 A. 2d 400.

We shall now look to the question of whether the trial judge abused his discretion in denying the motion for a new trial on October 6, 1972. That motion was timely made under Maryland Rule 759. The appellant advanced two reasons why he should have a new trial. The first was that the

appellant now wished to submit to a lie detector test. The court quite properly ruled that this afforded no basis to award a new trial:

"The Court: If the Defendant is tried under a plea of not guilty, he has the presumption of innocence throughout the trial and if no lie detector test is requested by the State, I put to you the question, does the Defendant, after conviction, have a right to demand a lie detector test. Do you have a precedent for that?

Mr. Gordon: I could find nothing on the point, one way or the other, although I attempted to.

The Court: Logic dictates to me that I deny the request in the absence of a precedent and the reason for that is, it is a matter of public policy."

The second reason advanced by the appellant was that the appellant's attorney had just learned from one Michael Ebbs, then in confinement in the Baltimore County Jail, that Ebbs acknowledged having committed the crime along with one Clifton "Butch" Taylor. The appellant's attorney acknowledged that it was extremely unlikely that he would be able to produce Mr. Ebbs in court to testify. Upon that basis, the judge denied the motion for a new trial. In oral argument, the appellant urges upon us *Chambers v. Mississippi*, 35 L.Ed.2d 297, wherein a confession to the crime by a third party was held to have been improperly excluded from the trial.

We do not believe that *Chambers* changes the law in this State, as that law has been so thoroughly analyzed by Chief Judge Orth in *Wilkins v. State*, 11 Md. App. 113, 129-133, 273 A. 2d 236. Maryland follows the great majority of common law jurisdictions in adhering to the rule announced in the *Sussex Peerage Case*, 8 Eng. Rep. 1034 (1844), to the effect that a declaration against penal interest, in contrast to a declaration against pecuniary or proprietary interest, is not a recognized exception to the hearsay rule. We have, however, as pointed out in *Wilkins*, modified the harshness of that rule where there are special circumstances providing

additional guarantees of trustworthiness to the out-of-court declaration against penal interest. See *Brennan v. State*, 151 Md 265, 134 A. 148; *Thomas v. State*, 186 Md. 446, 47 A. 2d 43; *Brady v. State*, 226 Md. 422, 174 A. 2d 167. *Chambers* is no more than an intimation of what the Maryland law already is under *Wilkins. Chambers* made clear that it was basing its reversal of a murder conviction upon a general "due process clause" denial of a fair trial and was not articulating new constitutional rules with respect to the laws of evidence. Chambers had been denied his right effectively to cross-examine a hostile witness as well as his right to offer, through three separate witnesses, the out-of-court confession of a third party. The Supreme Court was very careful to limit its holding to a denial of a fair trial based upon the combination of circumstances:

> "We need not decide, however, whether this error alone would occasion reversal since Chambers' claimed denial of due process rests on the ultimate impact of that error when viewed in conjunction with the trial court's refusal to permit him to call other witnesses." 35 L.Ed.2d at 310

The Supreme Court was also careful not to renounce in general terms that limitation on the exceptions to the hearsay rule which precludes statements against penal interest from falling within the exception:

> "Exclusion, where the limitation prevails, is usually premised on the view that admission would lead to the frequent presentation of perjured testimony to the jury. It is believed that confessions of criminal activity are often motivated by extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interest. While that rationale has been the subject of considerable scholarly criticism, we need not decide in this case whether, under other circumstances, it might serve some valid state purpose by excluding untrustworthy testimony." 35 L.Ed.2d at 311

In its discussion of the particular declarations against penal interest, at issue in *Chambers*, the Supreme Court pointed out that those confessions were made "under circumstances that provided considerable assurance of their reliability." They had been made to close acquaintances shortly after the murder had occurred. They were corroborated by a sworn confession reduced to writing. They were corroborated by other witnesses who testified that the confessor did the shooting. Three oral confessions to three different persons, all close friends and all in the immediate emotional wake of the crime, corroborated each other. These factors discussed by the Supreme Court are precisely the factors referred to in the Maryland cases of *Brennan*, *Thomas* and *Brady* as establishing "special circumstances" of trustworthiness.

We see nothing in the jail house admission of Ebbs, in the case at bar, made to the appellant's attorney only after the appellant had been convicted, to bring it within the special circumstances contemplated by *Chambers* or by *Wilkins* so as to limit the application of the general *Sussex Peerage Case* rule. It follows that the trial judge did not abuse his discretion in denying the motion for a new trial.

*Judgments affirmed.*