JOHN LINWOOD HALL *v.* STATE OF MARYLAND

[No. 971, September Term, 1973.]

*Decided July 22, 1974.*

The cause was argued before ORTH, C. J., and MOYLAN and LOWE, JJ.

*Courtland K. Townsend, Jr.*, for appellant.

*Leroy Handwerger, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County*, and *Darrel L. Longest, Deputy State's Attorney for Montgomery County*, on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The elasticity of our Constitution is the unique ingredient which distinguishes the successful American experiment in democracy from more obdurate precursors which have failed elsewhere. Our Constitution, and our laws as well, are adopted so as to permit expansion or contraction in order to meet the changing needs of the people. Judge Pound has said that "[t]he law of each age is ultimately what that age thinks should be the law." [1] More succinctly stated, law is like wearing apparel, it changes with the times.

Procedural rules, however, are not permitted the luxury of such elasticity of application or interpretation. Like rules of a game they cannot be equivocal. The Maryland Rules of Procedure limit and define the course of conduct litigants are compelled to pursue in preparation for and during trials. If it is important that statutes provide degrees of flexibility (to adapt to the human equation), it is equally important that the rules applicable to trials be precise.[2] A litigant —

---

1. People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, 450, 130 N. E. 601, 608. (Opinion by Pound, Cuthbert W., J.).
2. "Procedure is to law what 'scientific method' is to science." In Re Gault, 387 U. S. 1, 21.

especially one defending his freedom — must know without question the exact limits within which he may maneuver. The goals of social justice and individual rights are achieved by rules written with precision and laws adaptable to the exigencies of the people they govern. It is when laws are inflexible and rules imprecise that the blindfold of the lady justice takes on a meaning not intended by that symbol. While an inflexible law has given rise to our problem, a precise rule has provided us the solution.

John Linwood Hall was charged in a six count indictment with offenses ranging from assault with intent to murder to possession of a handgun with intent to injure. He was convicted by a jury of the Circuit Court for Montgomery County of assault with intent to maim and the use of a handgun in the commission of a felony. Judge Joseph M. Mathias imposed consecutive sentences of two and five years.

Although Appellant raises four questions, the emphasis of his appeal rests upon the trial court's refusal to permit him a "challenge" jury (*i.e.*, the right to twenty peremptory challenges under Md. Rule 746 a 1) as opposed to a "strike" jury (*i.e.*, the right to only four peremptory challenges under Md. Rule 746 a 2).[3]

Md. Rule 746 a 1 permits a defendant twenty peremptory challenges "[i]n a trial in which the defendant is subject, *on any single count,* to a sentence of death, life imprisonment or twenty years or more of imprisonment . . . ." (Emphasis added.) Appellant points out that assault with intent to murder carries a fifteen year sentence, Md. Code, Art. 27, § 12, and that the use of a handgun in the commission of that crime requires a *mandatory minimum* penalty of five years, Md. Code, Art. 27, § 36B (d). These sentences, he contends, add up to the twenty years called for by Md. Rule 746 as a prerequisite to a "challenge" jury.

Appellant reads into the handgun law a legislative intent not to create ". . . a separate crime, but . . . a vehicle for

---

3. The substance of Rule 746 now appears in § 8-301 of the Courts Art. which supersedes Art. 51, § 15. The Revisor's note specifies that § 8-301 was not intended to supersede Rule 746.

adding on an additional period of mandatory consecutive [4] time to the sentence for any felony of which the defendant is convicted, wherein he is found to have committed the felony with a hand gun." If that premise is correct the Legislature had a peculiar way of expressing it.

> "(d) *Unlawful use of handgun in commission of crime.* —
> Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a *separate misdemeanor* and on conviction thereof shall, in addition to any *other sentence* imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years." (Emphasis added.) Md. Code, Art. 27, § 36B (d).

It seems quite obvious that the Legislature used a unique procedure in requiring a mandatory minimum sentence and in expressing its intent that the misdemeanor be a "separate" crime, and not merely the occasion for imposing an additional sentence.

In addition to recognizing Appellant's ingenuity in raising this issue, we appreciate his concern in attempting to assert a right ". . . deemed a most essential one to a prisoner . . . highly esteemed and protected in law." *Turpin v. State,* 55 Md. 462, 464, quoting *Proffat on Jury Trials,* § 155. We are reminded, however, by *Stilson v. United States,* 250 U. S. 583, 586-587, that there is nothing in the Constitution of the United States (or of Maryland for that matter) which requires the granting of peremptory challenges. It is a privilege granted by legislative authority which must be taken with the limitations placed upon the manner of its exercise.

---

4. It will be noted that the statute does not use the term "consecutive" in its mandate.

At common law a ". . . defendant was allowed to challenge peremptorily 35 jurors, and the prosecutor originally had a right to challenge any number of jurors without cause, a right which was said to tend to 'infinite delayes and danger.' Coke on Littleton 156 (14th ed 1791)." (Footnotes omitted.) *Swain v. Alabama,* 380 U. S. 202, 212-213. Courts and Legislatures have attempted to balance these "infinite delayes and danger" with the retention of a highly desirable procedural privilege. The overloaded court dockets and overburdened tax payers have been somewhat assuaged by laws and rules which limit the number of challenges to 20 by the defendant and 10 by the State, and which confine the privilege to charges carrying extraordinary penalties.

The rapid increase in criminal court case loads and in criticism of the challenge jury, see *Swain v. Alabama, supra,* 216, has led to the imposition of additional restrictions on the privilege. Effective September 1, 1971, Rule 746 was amended to restrict the challenge jury to trials in which the defendant was subject to a ". . . sentence of death, life imprisonment or twenty years or more of imprisonment . . . ." Prior to that date, the Rule applied to any defendant charged with ". . . an offense punishable by death or confinement in the penitentiary . . . ," regardless of the length of his sentence, *Pearson v. State,* 15 Md. App. 462, 467, since "confinement in the penitentiary is an infamous punishment,"[5] *Danner v. State,* 89 Md. 220, 226. When it became clear that the criterion was so broad as to threaten the responsible conduct of criminal trials, the Court of Appeals imposed a clear and precise cut-off at twenty years penal exposure.

In a further attempt to avoid confusion and litigation, the Court honed the sharp edge of demarcation even more precisely by providing that the rule was to apply whenever

---

5. The cases distinguish between "infamous punishment" and "infamous crimes." The latter category seems to be restricted to those crimes classified generally as "crimes false" which may or may not carry extensive penal exposure. *See, e.g.,* Garitee v. Bond, 102 Md. 379 and Dutton v. State, 123 Md. 373.

the defendant was subject to certain punishment "on any single count," in lieu of "for an offense." That language was not chosen fortuitously but was designed as one of the "precise rubics" which the Court of Appeals have repeatedly advised counsel are not mere ". . . guides to the practice of law" and must not only be read but followed. *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570; *Brown v. Fraley,* 272 Md. 480, 483; *Green v. State,* 19 Md. App. 683, 687; *In Re Arnold,* 12 Md. App. 384, 394.

We are satisfied that neither the Legislature in enacting Md. Code, Art. 27, § 36B (d) nor the Court of Appeals in adopting Md. Rule 746, as amended, had any intention of permitting a combination of two sentences under separate counts to entitle a defendant to a challenge jury. On the contrary, we find precise language in the statute and the rule negating any such intent.

Appellant also attempts to raise for the first time on appeal the issue of the unconstitutionality of Md. Rule 746. On matters of such import and significance as constitutional questions, we cannot overstress the necessity of fully preserving the issue below. The trial court should be given not only the opportunity to rule, but also the assistance of counsels' arguments and memoranda in reaching its result. Again we repeat the message of *Vuitch v. State,* 10 Md. App. 389, 397-398:

> "In concluding that the constitutional questions now sought to be raised were not properly preserved for appellate review, we do not seek to delay the day when these important public issues must be squarely met and decided, either by us, or the Court of Appeals of Maryland. But it would be foolhardy in the extreme to undertake the resolution of such complex constitutional questions upon a record as procedurally and substantively deficient as that now before us — one in which the constitutional questions, though readily apparent prior to trial, were raised for the first time after the State had concluded its case-in-chief, and then only by an inappropriate motion (generally alleging

unconstitutionality along a front far more limited in thrust than that presently sought to be aired), submitted without comment, or illuminating argument. Whether the trial judge actually considered appellant's constitutional claims cannot be ascertained from the record since in denying the motion he made no comment thereon, and may well have concluded, quite properly, that the constitutional questions could not be raised at that juncture of the proceedings by motion for judgment of acquittal. Of course, nothing is better settled, than the rule that a question as to the constitutionality of a statute will not be considered on appeal when not properly raised and decided by the lower court. *Luthardt v. State*, 6 Md. App. 251; *Iozzi v. State*, 5 Md. App. 415; *Woodell v. State*, 2 Md. App. 433."

While it would be more convenient for us to dispose of that question while here involved with the rule, it would be unfair to the trial court and unwisely permissive to circumvent the *Vuitch* mandate.

Appellant's next contention is far less innovative. It lacks so much as an appearance of prejudice. He contends that certain questioning of the trial judge indicated ". . . disbelief in the witness's testimony and hostility toward the defendant . . . ." Accordingly, he argues, the jury had been prejudiced and a mistrial should have been granted.[6]

---

6. A witness for the Appellant, Darlene A. Neal, had just been cross-examined by the State. The court asked the following questions to which the witness replied:

"THE COURT: When Rudy was crawling around on his knees in the kitchen, did you see Sylvester Hebron?

"THE WITNESS: Yes, sir.

"THE COURT: Where was Sylvester Hebron?

"THE WITNESS: Sylvester was standing by the door.

"THE COURT: Was he anywhere near Rudy?

"THE WITNESS: Well, when Rudy was crawling or when the fight was going on.

"THE COURT: When the fight was going on.

"THE WITNESS: No. He was standing by the door when the fight was going on.

"THE COURT: When Rudy was crawling on the floor, was he anywhere near Rudy? (sic)

This Court as well as ". . . the Court of Appeals specifically affirmed the right of the trial judge to intervene into the questioning of witnesses." *Jefferies v. State,* 5 Md. App. 630, 632. Beyond that basic premise, *Madison v. State,* 200 Md. 1, 12, adds that "A judge's right to ask questions is not confined to questions which have no possible bearing on credibility . . . practically all relevant questions involve defendant's credibility." We perceive no error, no undue intrusion and no prejudice.

Finally, we find the evidence sufficient to support a conviction of assault with intent to maim and the use of a handgun in the commission of a crime of violence. Two eye witnesses in addition to the victim testified that the victim was shot by Appellant. For that matter Appellant himself admitted that he shot the victim. Md. Code, Art. 27, § 386 reads as follows:

> "If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall unlawfully and

---

"THE WITNESS: Yes. But when Rudy was crawling on the floor, when he had crawled over that way, Sylvester didn't move.

"THE COURT: Was Sylvester standing up or was he also crawling on the floor?

"THE WITNESS: No, sir. Sylvester was standing up.

"THE COURT: Did you see Sylvester pass the gun to Rudy?

"THE WITNESS: No, sir.

"THE COURT: How did the gun get out of Sylvester's possession onto the floor?

"THE WITNESS: I really don't know.

"THE COURT: You did see Sylvester with it in his possession earlier? You saw him with the gun; didn't you?

"THE WITNESS: That night?

"THE COURT: Yes. That is your testimony; is it not?

"THE WITNESS: Sylvester?

"THE COURT: Yes.

"THE WITNESS: Yes."

During redirect examination the court again interspersed two further questions:

"THE COURT: Where was Sylvester carrying it; in his pocket, or where?

"THE WITNESS: In his belt, I guess in here some place.

"THE COURT: How did this gun get out of Sylvester's belt onto the floor where your brother Rudy could pick it up?

"THE WITNESS: I really don't know.

"MR. MILLER: We are going to tell you, Your Honor.

It appears that no motion for a mistrial for this reason was made below.

> maliciously stab, cut or wound any person, or shall assault or beat any person, with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detainer of any part (sic) for any offense for which the said party may be legally apprehended or detained, every such offender, and every person counselling, aiding or abetting such offender shall be guilty of a felony and, upon conviction thereof, be punished by confinement in the penitentiary for a period not less than eighteen months nor more than ten years."

Appellant defends by asserting that during the gang fight he was put upon by the victim and acted in self-defense in shooting him. "In Maryland it is for the trier of the facts to determine whether the accused was justified in meeting force with force. If justification be found to have existed, the force used must not have been 'unreasonable and excessive', that is, must not have been more force 'than the exigency reasonably demanded.'" *Guerriero v. State,* 213 Md. 545, 549. From our review of the record the jury could easily have found that by shooting the victim Appellant used more force than the exigency reasonably demanded. Indeed, the evidence is sufficient to justify their having concluded that the shooting was not in self-defense at all. The testimony of animosity between the two culminating in physical violence even before the donnybrook that ensued, provided sufficient evidence of the prerequisite intent under § 386.

*Judgments affirmed.*