# QUENZILL COVINGTON *v.* STATE OF MARYLAND

[No. 352, September Term, 1976.]

*Decided January 13, 1977.*

The cause was argued before THOMPSON, POWERS and LOWE, JJ., and reargued before GILBERT, C. J., and MORTON, THOMPSON, MOYLAN, POWERS, MENCHINE, DAVIDSON, MOORE, LOWE, MELVIN, MASON and LISS, JJ.

Argued by *Bradford C. Peabody, Assigned Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Geraldine Kenney Sweeney, Assistant Public Defender,* on the brief, for appellant. Reargued by *Bradford*

*C. Peabody* and *Arnold M. Zerwitz, Assistant Public Defenders,* for appellant.

Argued and reargued by *Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Howard Grossfeld, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court. MENCHINE, J., filed a concurring opinion in which MASON, J., joins at page 466 *infra.*

The plea of not guilty, accompanied by an "Agreed Statement of Facts", is a peculiar animal. As was succinctly stated in *Barnes v. State,* 31 Md. App. 25, 35, 354 A. 2d 499, 505 (1976),

"Under an agreed statement of facts both State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon. If there is agreement as to the facts, there is no dispute [.]"

The trial below proceeded on such an agreed statement of facts. The defendant, Quenzill Covington, appellant here, was found guilty by the trial judge and sentenced to eight years, to run concurrently with another sentence (of four years) that he was then serving.

He makes the following contention on appeal:

"The court below erred in finding Appellant guilty without first affording Appellant the right to argue the merits of his case."

In support of this contention, Covington asserts that the lack of argument by his counsel, after the evidence was admitted,

prior to the Court's finding of guilty, denied him his right to counsel in violation of the precepts of *Herring v. New York*, 422 U. S. 853, 45 L.Ed.2d 593, 95 S. Ct. 2550 (1975); *Yopps v. State*, 228 Md. 204, 178 A. 2d 879 (1962); and *Moore v. State*, 7 Md. App. 330, 254 A. 2d 717 (1969).

Before evaluating his claim in terms of the above-mentioned cases and others, we set forth, with minor editing, the proceedings below up to and including the conviction of the accused.[1]

> "MR. ·CAREY: We have received a copy of the indictment, Mr. Clerk and we are familiar with it and we waive the reading thereof and the plea is not guilty. Mr. Covington, you advised me that you wish to plead not guilty. You also advised me that you wished to proceed under what is called a statement of facts. That's wherein the State's Attorney will read a statement of facts rather than present live testimony here this morning. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> MR. CAREY: Do you also understand that you could plead not guilty and ask for a jury trial?
>
> THE COURT: I will do that with him. Which count are you calling, Mr. Grossfeld?
>
> MR. GROSSFELD: First count. And, not as to the addendum. As to the first count of the indictment only.
>
> THE COURT: Mr. Covington, let me just advise you of a few things. By proceeding on an agreed statement of facts as your attorney has indicated that you are going to do, that means that the State will present to me an agreed statement of facts. You will not be

---

1. We have excluded the subsequent portion of the record because the right of allocution had been extended to the accused and his counsel had been fully heard.

permitted to testify. Normally you would have a right to testify in the case. But, by agreeing to proceed on an agreed statement of facts you are giving up your right to testify on your own behalf in the case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And, you are willing to give up your right to testify?

THE DEFENDANT: Yes.

THE COURT: All right. Why don't you have a seat. Mr. Grossfeld, what are the plea negotiations?

MR. GROSSFELD: Your Honor, the plea negotiations are as follows: Should the defendant be found guilty, the State would then recommend 8 years concurrent to the 4 years he is now serving dating from August, Your Honor. So, it's actually 8 years dating from August of 1975.

THE COURT: Do you have a date?

MR. GROSSFELD: That would be August 15, Your Honor.

THE COURT: All right. Mr. Carey, is that the actual extent of the plea negotiations?

MR. CAREY: Yes, Your Honor.

MR. GROSSFELD: And, the State will also nolle prosequi the other charges, Your Honor.

THE COURT: That's 3213?

MR. GROSSFELD: Yes, Your Honor.

THE COURT: Mr. Covington, the State's Attorney has stated in open court that in exchange for your agreeing to proceed on an agreed statement of facts in this case, the State will recommend to me that if you are found guilty, that I give you an 8 year's sentence concurrent with the 4 year sentence that you are now serving and that I give the 8 year sentence as of

458

August 15, 1975 so as to give you credit for the time you are incarcerated for this particular offense. And, the State will nolle prosequi the other charges against you. Now, has anyone made any other promise, threat or inducement to you other than what I have just told you to get you to agree to proceed on an agreed statement of facts in this case?

THE DEFENDANT: No, sir.

THE COURT: Now, do you understand that you could elect to be tried by a jury in this case?

THE DEFENDANT: Yes.

THE COURT: What that means is that 12 registered voters from the City of Baltimore would comprise the jury. No one can be excluded from the panel because of race, color, religion, sex, national origin or economic status and that in order for you to be convicted of this offense, all 12 members of that jury would have to be convinced of your guilt. In other words, if one member of that jury was not convinced of your guilt beyond a reasonable doubt then you could not be convicted of this charge. Now, do you understand by proceeding on an agreed statement of facts that you're giving up your right to be tried by a jury, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, if you had not proceeded in this way, if we had a trial, you would have the right to see and hear all of the witnesses against you. Your attorney would have a right to cross-examine these witnesses. You would have the right to stop the State from producing any evidence that would be otherwise inadmissible. By proceeding on an agreed statement of facts, do you understand that you are giving up this right that I have just mentioned to you?

THE DEFENDANT: Yes.

THE COURT: Now, do you also understand that by proceeding in this fashion the State can prove its case against you by reading into the record what it intends to prove without having to put witnesses on the witness stand and the State will be able to have other evidence admitted without objection on your part. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And, do you also understand that I will consider the facts given to me by the State as true and can use those facts as a basis for finding you guilty of this offense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, if there were a trial, you would have a right to testify in your own behalf or you could choose not to testify in your own behalf and no inference of guilt would be raised because of your failure to testify. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you are giving up the right to testify in this case?

THE DEFENDANT: Yes.

THE COURT: All right. You can be seated.

MR. CAREY: Your Honor, I'm sure that there will be no problem. But, my understanding on an agreed statement of facts is that he would have a right to testify. I'm sure he's going to advise the Court that he does not intend to.

THE COURT: Well, the way we proceed in this court, and, it varies from Judge to Judge, *that if you agree to proceed on an agreed statement of facts you have to agree to those facts.*

MR. CAREY: *It is an agreed statement of facts.*

THE COURT: That's right. And, *I will only proceed in this case if the defendant forgoes his right to testify. In other words, he has to agree to the facts and not testify to the contrary. Anything he wants to say in mitigation he can say after and if a guilty finding is made.*

\* \* \*

THE COURT: Mr. Grossfeld, do you want to give me the facts?

MR. GROSSFELD: Your Honor, the agreed statement of facts agreed to by counsel for the State and the defense are as follows: The State would have called Detective Williams who's present in court today, Your Honor, who is aware and does know of the plea negotiations.

\* \* \*

The detective would testify that on May 15, 1975 he received a phone call from an informant concerning some narcotics that could be purchased at Greenmount and North Avenue section of Baltimore City. At approximately 4 p.m. that day the detective met his informant at North Avenue and Greenmount Avenue in Baltimore City at which time the informant then took him over to meet the defendant seated at the trial table who the detective would identify. At that time the informant introduced the detective to the defendant. Upon having a conversation, the detective was able to reach an agreement with the defendant where he would buy 25 bags of heroin or a bundle for the price of $125 at approximately 4:30 p.m., the detective, along with the defendant went to 107 Albemarle Street — Apartment 7F. The detective took him into — 107 Albemarle Street. At approximately 5 o'clock when they arrived to

this particular location and in that apartment, the defendant then handed over to the officer 25 glassine bags containing a white powdery substance which the detective believed to be heroin. The detective then left that particular location.

THE COURT: Didn't he pay for it?

MR. GROSSFELD: He paid $125, Your Honor. The detective then forwarded the 25 glassine bags to Washington where it was analyzed by Earl Parrish. Washington, D. C. and, the results was 7.5 percent heroin. Your Honor, the State would offer into evidence the 25 glassine bags that were purchased from the defendant for $125 by the detective from the defendant along with the chemical analysis which is attached as State's Exhibit Number 1 with the Court's permission.

THE COURT: All right.

MR. GROSSFELD: That would be the statement of facts, Your Honor.

THE COURT: Mr. Carey, any additions or corrections to the statement of facts?

MR. CAREY: I have advised Mr. Covington that at this time you would hear from him as to any additions or corrections and he indicated to me that he has none. Is that correct, Mr. Covington?

THE DEFENDANT: Yes.

THE COURT: All right. Based upon the facts given to me by the State, I find that they are sufficient to find the defendant guilty beyond a reasonable doubt of the first count in indictment number 3214. And, accordingly, I do find him guilty of the charge." (Emphasis added.)

Thus, to delineate the transaction above, we observe that: (1) the defendant was aware of and waived his right to a fair

and impartial trial by a jury of his peers; (2) he was aware of his right of confrontation with the witnesses against him and waived that right; (3) he knew of his right to freedom from self-incrimination, without penalty for the exercise of that right; (4) he was represented by counsel; (5) counsel, on behalf of his client, had "worked out a deal" as to sentencing — i.e. eight years, whereas defendant, had he had a full-blown trial, would have exposed himself to a maximum of twenty years or more imprisonment; (6) the State's recommendation of eight years was accompanied by no threats or other inducements; (7) defendant agreed with the statement of facts as presented by the State; (8) those facts consisted of sufficient evidence to support a finding of guilt; (9) defendant's counsel made no effort to argue; (10) defendant did not object to his counsel's silence; (11) the court did not affirmatively deny defendant or his counsel the right to argue the merits of the case.

The Supreme Court in *Herring, supra,* (dealing with a New York statute that made discretionary with the trial judge the question whether defense counsel would be heard in summation and wherein the trial judge had declined to hear counsel), stated:

> "There can be no doubt that closing argument for the defense is a basic element of the adversary fact-finding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense.
>
> * * *
>
> Some cases may appear to the trial judge to be simple — open and shut — at the close of the

evidence. And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be 'likely to leave [a] judge just where it found him.' But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel." 422 U. S. at 858-863, 45 L.Ed.2d at 598-601, 95 S. Ct. at 2553-2556 (footnotes omitted).

The Court of Appeals in *Yopps, supra,* stated:

"The ruling of the trial court [declining in a nonjury case, to hear argument of counsel after a prior pronouncement by the court of a guilty verdict] was manifestly prejudicial to the right of the accused to be represented by counsel throughout the entire trial and amounted to a denial of his rights under Article 21 of the Declaration of Rights of this State. While time is important to the court it is also important to the accused, whose life or liberty hangs in the balance. Through his counsel, no matter how convincing the evidence may appear to be, the accused has the right to subject all the facts and evidence produced at the trial to a logical analysis." 228 Md. at 208, 178 A. 2d at 882.

*Moore, supra,* dealt with a nonjury case wherein the record was silent as to the question of whether trial counsel had sought the opportunity to argue, but where appellant's counsel contended that such opportunity had been denied. This Court stated:

"We think the present case is controlled by *Yopps* and that, on the facts, *Rome* is manifestly inapposite. On its face, the record indicates that the court announced its guilty verdict without first affording appellant's counsel an opportunity to

argue the merits of the case. The failure of appellant's counsel, after the court announced its verdict, to assert the right to present argument, as was done by defense counsel in *Yopps*, does not of itself constitute a waiver of such right. *Cf. West v. United States*, 399 F. 2d 467 (5th Cir.). The State constitutional right of an accused to have counsel argue the merits of his case before entry of a verdict, as articulated in *Yopps*, is based on the provisions of Article 21 of the Maryland Declaration of Rights guaranteeing an accused in a criminal case the right 'to be allowed counsel.' We think it likely that the right is similarly rooted in the provisions of the Sixth Amendment to the Federal Constitution, now applicable to the states through the Fourteenth Amendment, *Gideon v. Wainwright*, 372 U. S. 335, guaranteeing an accused in a criminal case the effective assistance of counsel for his defense. While it is true that constitutional rights, whether Federal or State, may be waived, we find no such waiver on the facts of this case. Presuming waiver from a silent record is ordinarily impermissible, *Wayne v. State*, 4 Md. App. 424, and insofar as the waiver of a Federal constitutional right is concerned, we must indulge every reasonable presumption against waiver and not presume acquiescence in the loss of fundamental rights, *Brookhart v. Janis*, 384 U. S. 1. In any event, for the waiver of a Federal constitutional right to be effective, it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst*, 304 U. S. 458. Whether the constitutional right here involved be founded on the State or Federal Constitution, or both, we hold that appellant did not waive the right to argue the merits of his case prior to entry by the court of its guilty verdict. See Annotation, 38 A.L.R. 2d 1396-1439." 7 Md. App. at 333-34, 254 A. 2d at 719 (footnote omitted).

Neither *Herring* nor *Yopps* are apposite. *Herring, supra,* turned on a New York statute which empowered a trial judge to deny absolutely the opportunity for any closing summation at all. Additionally, there was conflicting testimony produced. Moreover, *the defendant's counsel requested to be "heard somewhat on the facts," but that request was denied.* In *Yopps, supra,* there also was conflicting testimony, and *the trial court specifically denied defendant's counsel the opportunity to argue the merits of the case.*

Although the appellant couches his contention before this Court as a denial of the right to counsel, we perceive the issue actually to be one of an alleged denial of the effective assistance of counsel. This is so because counsel participated throughout the proceeding but did not argue the case at the close of the evidence. We are unable, on the record before us, to glean that counsel asked to be heard or that the trial court denied argument.

We observe that in the instant case neither the appellant nor his counsel raised, at trial, any issue of a denial of argument of the law applicable to the agreed facts. Thus the issue is raised for the first time on appeal. Maryland Rule 1085 provides that we should not ordinarily decide *any* issue which "does not plainly appear by the record to have been tried and decided by the lower court [.]" *Palmer v. State,* 19 Md. App. 678, 313 A. 2d 698 (1974); *Ragler v. State,* 18 Md. App. 671, 308 A. 2d 401 (1973); *Gazaille v. State,* 2 Md. App. 462, 235 A. 2d 306 (1967), even Constitutional questions, *Squire v. State,* 32 Md. App. 307, 360 A. 2d 443 (1976), cert. granted Oct. 27, 1976; *Hall v. State,* 22 Md. App. 240, 323 A. 2d 435 (1974); *Palmer v. State, supra; Smith v. State,* 16 Md. App. 317, 295 A. 2d 802 (1972).

Notwithstanding Maryland Rule 1085, we reversed the trial court in *Moore, supra,* even though the issue of argument by counsel was not raised in the trial court. While Md. Rule 1085 was invoked by the State in its brief in *Moore,* we did not address the point. We believe *Moore's* articulation of the right of counsel to be correct, but we should not have considered the matter on direct appeal because it was not

raised nor decided in the trial court. Md. Rule 1085. To the extent that *Moore* indicates that the issue may be presented for the first time on appeal, *Moore* is expressly overruled.

Appellant, however, is not left without a right to air his grievance. Under Md. Ann. Code art. 27, § 645A, the appellant may proceed by way of post conviction and demonstrate, if he can, to the satisfaction of the hearing judge, that the appellant was denied the effective assistance of counsel in that there was no opportunity for argument by counsel before or after the court announced its verdict. Of course, the State is equally free to show, if it can, that appellant's trial counsel obtained all that he sought on appellant's behalf, and knowingly forewent the right to argue the law to the trial judge. *Palmer v. State, supra; see also State v. Zimmerman,* 261 Md. 11, 273 A. 2d 156 (1971).

> *Judgment affirmed.*
> *Costs to be paid by appellant.*

*Menchine, J., concurring:*

I disagree with the route taken by the majority to affirmance of the judgment below, but concur in that result.

I am persuaded that a due respect for the course followed by this Court in *Moore v. State,* 7 Md. App. 330, 254 A. 2d 717 (1969), coupled with the manifest propriety of the conduct of the trial in the lower court, combine to justify us in reaching and rejecting appellant's substantive contention on appeal. We should not, under the circumstances of this case, utilize Maryland Rule 1085 as a basis for affirmance.

Maryland Rule 1085, applicable to this Court, is essentially identical [1] to Maryland Rule 885, applicable to the Court of Appeals of Maryland. In *Walters v. State,* 242 Md. 235, 218 A. 2d 678 (1966), Judge Barnes, after pointing out ,that three issues on appeal were not raised below and thus were not properly before the Court, went on to say at 238 [681]: "As these issues might be raised in a post

---

1. The two rules are identical in every respect except that the words "circuit court" are used in 885 with the words "lower court" used in 1085.

conviction proceeding, we will dispose of them now in anticipation of a possible later collateral attack on the conviction." We should follow precisely such a course here.

Instead, we have chosen to repudiate the procedural action taken by us in *Moore v. State, supra,* without guidance to a post conviction tribunal as to *Moore's* substantive impact, if any, upon the subject case.

Appellant contends:

> "The court below erred in finding Appellant guilty without first affording Appellant the right to argue the merits of his case."

I think his case had no merits to argue save for mitigation of punishment, the accused having waived his right to argument by counsel upon the issue of guilt or innocence. Both counsel and accused were accorded the right to speak in mitigation.

Appellant's reliance upon *Herring v. New York,* 422 U. S. 853, 45 L.Ed.2d 593, 95 S. Ct. 2550 (1975); *Yopps v. State,* 228 Md. 204, 178 A. 2d 879 (1962); and *Moore v. State, supra,* is misplaced. There is no necessity to retreat in any respect from the holdings in that trilogy of cases. It is plain that the subject case is beyond the range of their impact.

*Herring, Yopps* and *Moore,* all *supra,* in unison imperatively declare that argument of counsel is a fundamental arrow in the full quiver of rights conferred by the Sixth Amendment's assurance of the assistance of counsel. This is not to say, however, that the accused may not withdraw this fundamental arrow from its quiver and waive its use.

A common thread running through this trilogy of cases is the existence in each of *disputed facts* requiring resolution by the trier of facts. See *Herring, supra,* at 856 [597] [2552]; *Yopps, supra,* at 206 [880]; and *Moore, supra,* at 331 [718].

A second common thread running through all three is clear recognition of the right of the trial judge to restrict argument to the *issues* of the particular case. In *Herring, supra,* it was said: "The presiding judge must be and is given

great latitude in controlling the duration and *limiting the scope of closing summations.*" (Emphasis added.) 422 U. S. at 862, 45 L.Ed.2d at 600, 95 S. Ct. at 2555.

In *Yopps, supra,* it was said: "The constitutional right of a defendant to be heard through counsel includes his right to have his counsel make a *proper* argument on the evidence and the applicable law in his favor however simple, clear, unimpeached and conclusive the evidence may seem *unless he has waived his right to such argument, or unless the argument is not within the issues of the case ....*" (Emphasis added.) 228 Md. at 207, 178 A. 2d at 881.

In *Moore, supra,* it is plain that its rule was limited to "an opportunity *to argue the merits of the case.*" (Emphasis added.) 7 Md. App. at 332, 254 A. 2d at 718.

The purpose of argument on the issue of guilt or innocence is to direct the eye and the mind of the court or jury to evidence favorable to the accused; to suggest the invalidity or inadequacy of evidence against the accused; to point out missing elements of proof; or to direct attention of the trier of facts to applicable law favorable to the accused.

In the subject case the trial judge very carefully informed and advised the accused: of his right to a jury trial; of his right to confront the witnesses against him; of his right to freedom from compulsory self-incrimination and the concomitant attributes of that right. He pointed out that the facts agreed upon would be considered by the court to be true and went on to make crystal clear that he would not accept an "agreed statement of facts" if the accused entered any caveat upon it. The appellant entered none, and acknowledged complete understanding of his explained rights.

Appellate counsel have not undertaken to enlighten us as to the nature of permissible argument on an issue of guilt or innocence under the admitted facts. They have been content simply to declare that "this Court should not speculate that there may be none."

I do not find the agreed facts to give rise to any speculation. They unequivocally establish both the *corpus*

*delicti* of the offense charged and the criminal agency of the appellant.

Counsel for appellant rely upon the conceded rule that presuming constitutional waiver from a silent record is impermissible. *Carnley v. Cochran,* 369 U. S. 506, 8 L.Ed.2d 70, 82 S. Ct. 884 (1962); *Moore v. State, supra.*

This is not a silent record. I am persuaded that the express waivers set forth in detail in the majority opinion, coupled with all other circumstances of this case, make it plain and clear that the right to argument by counsel upon the issue of guilt or innocence was knowingly and intelligently waived. This record demonstrates a classic example of a knowing, intelligent, voluntary waiver, express and by conduct, of the right to argument by counsel upon the issue of guilt or innocence.

In *Carnley v. Cochran, supra,* the Supreme Court said:

> ". . . we recognized in Rice v. Olson[2] that, although the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, the entry of the guilty plea might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right." 369 U. S. at 515, 8 L.Ed.2d at 77, 82 S. Ct. at 890.

*Wayne v. State,* 4 Md. App. 424, 431, 243 A. 2d 19, 24 (1968), recognized that there may be circumstances where the conduct of the accused is so plain and clear as implicitly to demonstrate a knowing and intelligent waiver of the right to counsel. *See also State v. Zimmerman,* 261 Md. 11, 23, 273 A. 2d 156, 162 (1971); *State v. Panagoulis,* 3 Md. App. 330, 339, 239 A. 2d 145, 151 (1967).

Judge Mason has authorized me to state that he concurs in the views herein expressed.

---

2. Rice v. Olson, 324 U. S. 786, 89 L. Ed. 1367, 65 S. Ct. 989 (1945).