492 A.2d 346

Ronald JACKSON

v.

STATE of Maryland.

No. 1098, Sept. Term, 1984.

Court of Special Appeals of Maryland.

May 13, 1985.

Mark Colvin and José F. Anderson, Asst. Public Defenders, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Valerie J. Smith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Julius Silvestri, Asst. State's Atty. for Baltimore City, Baltimore, on the brief), for appellee.

Argued Before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

BISHOP, Judge.

The Circuit Court for Baltimore City, sitting without a jury, found appellant, Ronald Jackson, guilty of robbery with a deadly weapon, kidnapping and two counts of assault with intent to murder.

Appellant asks:

I. Did the court commit reversible error in finding him guilty without first affording him the opportunity to present closing argument?

II. Was the evidence sufficient to convict him of assault with intent to murder?

III.  Can appellant be convicted of, and sentenced for, two counts of assault with intent to murder when he fired only one shot?

## FACTS

The State adduced evidence that on December 23, 1983, Charles Gibson, a taxicab driver, pulled up in front of 258 Robert Street to pick up a fare.  A man, whom Gibson identified in court as appellant, came out, opened the front door to the cab, produced a sawed-off shotgun, and ordered Gibson out of the cab.  As Gibson got out, he activated the cab's emergency warning device known as a "trouble light." He then gave appellant $30 to $40 in cash.  Two other men came out of the building and Gibson was ordered back into the rear seat of the taxicab.  The three other men also got into the cab and drove off with Gibson.  Appellant was seated in the front on the passenger side next to the driver, holding the sawed-off shotgun.

Gibson testified that while in the cab, he cried and pleaded with appellant not to shoot him but appellant responded by punching him in the mouth.  When the cab reached the 900 block of Argyle Avenue, Gibson was told to get out of the cab and into the trunk.  Minutes later, from inside the trunk, Gibson heard a police siren and saw the reflection of blue light.  He heard a loud "bang" as the car picked up its speed.  Eventually the car came to a stop, and Gibson was subsequently let out of the trunk by the police.

Officer Lewis Stotler testified that he and his partner, Dennis Mateo, were driving on Martin Luther King Boulevard when they saw a cab with its red "trouble light" on. He could see two black males inside the cab.  The police attempted to stop the cab by activating the blue light and siren on their patrol car, but the cab did not stop and continued "at a speed of 50 to 60 miles an hour."  As the cab turned onto the Interstate 95 extension, Mateo pulled alongside the cab.  Stotler leaned out of the window and shined a flashlight into the driver's eyes in order to get his

attention. What happened thereafter was described by Stotler as follows:

> I returned into the vehicle after leaning out, and advised the officer that there was someone hunched down, [in the back seat] and we slacked up and pulled behind him, and broadcast that we were following a cab with the trouble light on, driver failed to stop for us.
>
> We were about two car lengths behind it, and I saw movement in the rear of the vehicle, and I heard a thump, and the cab window was blown out and the glass and so forth was thrown out on our car.
>
> We backed up further, and the helicopter [which by that time had joined in the pursuit] threw its lights over on the cab, and we extended our distance, knowing that we had been shot at.

The cab tried to lose the squad car by turning onto a side street. As it turned a corner, Officer Stotler observed the cab's rear passenger door open. Moments later he saw a man, whom he identified as appellant, jump out of the cab. Officer Mateo apprehended appellant shortly thereafter.

After appellant was arrested and placed in the custody of another officer on the scene, Stotler and Mateo located the driver, John Vaughn, several blocks away. After appellant and Vaughn were in custody, Stotler heard a "knocking" from the trunk and let Gibson out. In the cab they found a sawed-off shotgun with one spent cartridge.

Officer Mateo's description of the events leading to appellant's arrest was, with minor differences, consistent with that of Stotler. With respect to the shooting, Mateo testified as follows:

> At around Caton Avenue the suspect in the back jumped up, fired a shot, glass sprayed all over our car making me fear for my life and Officer Stotler's life, so I backed off approximately ten car lengths.

The defense presented no evidence. Appellant's Motion for Judgment of Acquittal was denied. Thereafter, the following occurred:

THE COURT: Anything else to present?

MR. QUISGARD [Defense counsel]: No.

THE COURT: The test is now beyond a reasonable doubt and to a moral certainty as to all four charges.

*Any argument?*

MR. QUISGARD: *Yes.*

MR. SILVESTRI [Prosecutor]: Your Honor, I believe the State has met its burden as to the kidnapping and the assault. He had identified first of all the individual who pointed the shotgun and bailed out of the rear seat of the cab. The officer described the man with the brown coat who fired the blast and was in the back seat from where the blast came. The officers testified that they were placed in fear. Certainly it was danger, fired directly at the officers. Your Honor, whether or not the blast did actual damage to the officers is immaterial. Certainly there was an assault here, and they were placed in fear, backed off for their own protection, from any further attacks. And certainly there was an intent to kill.

As to the kidnapping, you heard that Mr. Gibson was placed in the trunk and carried away. Fortunately the officers were able to come to his aid and released him.

I believe, Your Honor, beyond a reasonable doubt that the defendant is guilty of the robberies, the kidnapping and assault with intent to murder as to both officers.

THE COURT: The Court finds beyond a reasonable doubt and to a moral certainty that there was a robbery of the victim in this case, Mr. Gibson, that robbery was at gun point, and there was an exchange of United States currency from the victim, Mr. Gibson, to the assailants in this case, more particularly to the defendant. So the Court finds that robbery with a dangerous and deadly weapon has been sustained.

As to kidnapping, 105, the Court believes that the State has met its burden as to kidnapping in this case.

As to assault with intent, there was a shotgun blast from the cab in the direction of the police car. Both

officers testified that they were in fear at that time. There was a shotgun found in the cab and the Court finds that the defendant was the one who pointed that weapon at the officers.

Although there was no direct testimony that the weapon was fired by the defendant, there is evidence that the gun was in the possession of the defendant, and the Court believes it was with the intent to do bodily harm, and to strike a vital organ of the police officer.

(Emphasis added).

## I.

### Premature Verdict

Appellant, relying on *Spence v. State,* 296 Md. 416, 463 A.2d 808 (1983) and *Jones v. State,* 55 Md.App. 695, 466 A.2d 55 (1983), asserts that the trial judge committed reversible error by finding him guilty without first affording him the opportunity to present closing argument. On the other hand, appellee, relying on *Covington v. State,* 34 Md.App. 454, 367 A.2d 974 (1977), *aff'd.* 282 Md. 540, 386 A.2d 336 (1978) and M.R.P. 1085, contends that appellant failed to raise this issue at trial "by objection or otherwise" and is thus precluded from raising it for the first time on direct appeal. The issues are thus squarely presented: (1) Under *Covington,* what action was appellant obliged to take at the trial level in order to preserve for appellate review an alleged deprivation of the constitutional right to present closing argument? (2) If the right was denied below, does *Spence* require our reversal *per se,* despite the dictates of *Covington* and M.R.P. 1085? Both issues were resolved by the recent case of *Cherry v. State,* 62 Md.App. 425, 489 A.2d 1138, (1985).

In *Cherry,* after a lengthy discussion of *Spence, Covington* and *Jones,* the Court reasoned that when a trial judge announces his verdict without first affording the defense an opportunity to present closing argument, "the defense is presented with at least three alternatives:"

(1) counsel may object to the premature verdict and request a mistrial. Under *Spence,* failure to grant a mistrial under these circumstances is reversible error:

(2) counsel may remain silent and proceed to the disposition stage of trial. Direct appellate review of the error is waived: [1]

(3) counsel may object to the premature verdict, request that the verdict be stricken, not move for mistrial and proceed with closing argument.[2]

62 Md.App. at 433–434, 489 A.2d 1138 (footnotes omitted).

■ In the case *sub judice,* although appellant requested closing argument at the trial court's invitation, the judge did not deprive him of the opportunity to argue until he announced his premature verdict. It is now clear from the discussion in *Cherry, supra,* that in order to preserve that error for direct appellate review, appellant was obliged to object to the trial court's action. M.R.P. 1085. For reasons which are not apparent from the record, he failed to do so and the issue is therefore not properly before us.

As in *Covington,* post conviction procedure remains available to appellant. Therefore "our insistence that an appellate court reach its conclusions with full information before it in no way deprives [appellant] of any rights." 282 Md. at 545, 386 A.2d 336.

We are mindful that the factual posture of appellant's case is closely analogous to that presented in *Lee v. State,*

---

1. At post-conviction proceedings, "evidentiary issues may be fully explored [and] [t]he Court will have before it a full record upon which to determine whether the right of closing argument ... was denied ... whether [the defendant] knowingly waived such argument, or whether such argument was waived as a matter of trial tactics." *Covington,* 282 Md. at 544–5, 386 A.2d 336, *Cherry,* 62 Md.App. at 431, 489 A.2d 1138.

2. Under this scenario, the defendant would have made a tactical choice between moving for a mistrial and proceeding with the closing argument; having received what he requested, he could not thereafter on direct appeal claim error. *See Cherry* at 434, 489 A.2d 1138. Obviously, this tactical decision could be reviewed in post-conviction proceedings.

56 Md.App. 613, 468 A.2d 656 (1984). In that case, as in *Jones v. State,* the court implicitly agreed with the State's contention that the appellant, by failing to object to the trial court's premature verdict, waived the right to direct appellant review of the closing argument issue. Relying on language from *Jones,* however, the court nevertheless reversed on the issue, holding that *"Spence* . . . precludes us from exercising Rule 1085 discretion not to decide *the unpreserved issue."* 56 Md.App. at 625, 468 A.2d 656 (quoting *Jones,* 55 Md.App. at 700, 466 A.2d 55) (Emphasis added). This rule of reversal "per se" regardless of Rule 1085, as announced in *Jones* and applied in *Lee,* was expressly overruled in *Cherry* as inconsistent with the Court of Appeals holdings in *Spence* and *Covington.* 62 Md.App. at 433, 489 A.2d 1138. Neither *Lee* nor *Jones* is helpful to appellant's cause.

## II.

### Sufficiency of the Evidence

Appellant next contends that the evidence was insufficient to permit a conviction for assault with intent to murder. In reviewing the sufficiency of the evidence the test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980).

Relying on cases from other jurisdictions, appellant specifically argues that the evidence was legally insufficient because it showed only that appellant fired at the squad car generally and not directly at any vital organ belonging to the officers inside. We have previously held that such facts can, as a matter of law, support an inference of assault with intent to murder. *See e.g. Woodard & Demby v. State,* 13 Md.App. 114, 123–4, 282 A.2d 9, *cert. denied,* 263 Md. 723 (1971) (Evidence that appellants fired shots at pursuing police car sufficient to support inference that shooting was

directed at vital organs of each officer with intent to do grievous injury). *Accord, Nickerson v. State,* 22 Md.App. 660, 665, 325 A.2d 149 (1974) (Evidence that weapon is aimed toward human being and discharged in general direction of human being in random fashion supports inference of intent to murder); Clark & Marshall, *Law of Crimes,* § 5.03 (7th Ed.1967). In reliance on the foregoing authorities, we reject appellant's argument.

## III.

### Multiple Counts of Assault

■ Appellant argues that he cannot be convicted or sentenced for two counts of assault with intent to murder because, at best, the State proved that appellant fired only one shot at the two pursuing police officers. The essence of appellant's argument is that where one criminal incident results in multiple victims, it is necessarily but one offense. This contention is without merit.

In *Harris v. State,* 42 Md.App. 248, 400 A.2d 6, *rev'd on other grounds sub nom, Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), the appellant was charged with two counts of violating Md.Ann.Code 1957, art. 27, § 386.[3] Harris was escaping from the scene of a robbery, when he fired four shots at two police officers who were attempting to apprehend him. He was subsequently charged, *inter alia,* with two counts of assaulting the officers with intent to prevent his lawful apprehension; one for each officer as-

---

**3.** Article 27, § 386 provides:

If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall unlawfully and maliciously stab, cut or wound any person, or shall assault or beat any person, with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained, every such offender, and every person counselling, aiding or abetting such offender shall be guilty of a felony and, upon conviction thereof, be punished by confinement in the penitentiary for a period not less than eighteen months nor more than ten years.

saulted. The trial court convicted Harris of both counts and sentenced him to two consecutive five year terms of incarceration. We affirmed, holding that the single criminal incident constituted two separate violations of § 386. We stated

> Although there is no case law addressing this precise issue with respect to Article 27, § 386, we note that there is much authority involving closely analogous situations. The Court of Appeals has held that assaults upon different victims, although arising out of the same transaction, are separate crimes. *Cousins v. State,* 277 Md. 383, 354 A.2d 825, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976); *Novak v. State,* 139 Md. 538, 115 A. 853 (1921). *Cousins* is particularly apposite because of its factual similarity to the present case. There the defendant wielded a knife against two store detectives while escaping with stolen property. It was held that the defendant's acquittal on a charge of assaulting one of the detectives did not bar a subsequent prosecution for assault against the other detective because the two crimes were separate offenses. *We also note that the crime of assault is closely analogous to the offenses proscribed in Article 27, § 386.*
>
> It is true that *Cousins* and *Novak* deal with principles of double jeopardy. Nevertheless, their value in the present case is that they demonstrate that *assaults against multiple victims arising out of the same criminal incident are separate and distinct crimes.* *See also Melville v. State,* 10 Md.App. 118, 268 A.2d 497, *cert. denied,* 259 Md. 729–734 (1970) and *Jones v. State,* 3 Md.App. 608, 240 A.2d 347, *cert. denied,* 251 Md. 750 (1968); 394 U.S. 993, 89 S.Ct. 1484, 22 L.Ed.2d 769 (1969). In both of those cases the defendants were convicted on separate counts of assault against different victims arising out of the same criminal incident.

42 Md.App. at 258–9, 400 A.2d 6. (Emphasis added). *See also,* Gilbert & Moylan, *Maryland Criminal Law:* Practice & Procedure, § 37.6, p. 444 (If in the course of a single . . .

assault ... a defendant ... assaults ... multiple victims, then the number of victims determines the number of units of legitimate prosecution.) Provided the State can prove that appellant, in firing only one shot at the moving police car, intended to murder or cause grievous bodily harm to each officer and that each officer had a reasonable fear of such consequences, we see no bar to multiple prosecutions under the particular facts of this case. Of course, where a defendant is convicted of two crimes, he is subject to a penalty for each violation. *Harris,* 42 Md.App. at 259, 400 A.2d 6; *Kaylor v. State,* 285 Md. 66, 70, 400 A.2d 419 (1979).

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY APPELLANT.