# WILLIAM SYLVESTER BUTLER *v.* STATE OF MARYLAND

[No. 837, September Term, 1978.]

*Decided March 9, 1979.*

The cause was submitted on briefs to GILBERT, C. J., and MOORE and WILNER, JJ.

Submitted by *Phillip M. Sutley* and *Sutley & Marr* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Arrie W. Davis, Assistant Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Gerald Anders, Assistant State's Attorney for Anne Arundel County,* for appellee.

WILNER, J., delivered the opinion of the Court.

Appellant was convicted in the Circuit Court for Anne Arundel County of possession of "controlled paraphernalia" in violation of Md. Annot. Code art. 27, § 287 (d) (iii), for which he was sentenced to prison for two years. In this appeal, he raises three issues, the first two of which concern the sufficiency of the evidence produced against him and may be dealt with in short order.

Acting upon information received from a drug enforcement agent in Detroit, State Trooper Charles Boyd, assigned to Baltimore-Washington International Airport, observed the arrival at the airport of a particular aircraft and maintained surveillance of two of its passengers. One of these passengers was appellant, the other a man named John Davis. He first saw the two men just after they had deplaned, when they were about 50 yards from the aircraft, walking away from the plane. They were about 10 feet apart. Davis was carrying a tan satchel; appellant was carrying a clothing bag.

The two men entered the terminal building, stopped at the information booth, and had a 10-15 second conversation. They then proceeded outside where they both attempted to enter a cab — together. At this point, Trooper Boyd introduced himself and apparently suggested that they accompany him to the State Police office at the airport, which they agreed to do. Trooper James Simmons met them at that office. Ultimately, with Mr. Davis' written consent, he searched the satchel, previously in Davis' physical possession and found therein, among other things, various prescription bottles with appellant's name on them, two plastic bags containing, together, over 630 grams (approximately one pound six

ounces) of a white powder later identified as quinine, and one plastic jar containing nearly 500 grams (just over one pound) of a substance later identified as lactose.

Section 287 of art. 27 provides, in relevant part, that, except as otherwise authorized (which in this instance it was not), it is unlawful for any person:

"(d) To possess or distribute controlled paraphernalia which shall mean . . .

(iii) Lactose, quinine . . . in sufficient quantity and under such circumstances which reasonably indicate an intention to use any such substance for the illegal manufacture, distribution or dispensing of any controlled substance. Evidence of such circumstances shall include but not be limited to close proximity of any such controlled paraphernalia to any other adulterants, diluents or equipment commonly used in the illegal manufacture and distribution of controlled substances, such as but not limited to any of the following: scales, sieves, strainers, measuring spoons, staples and staplers, glassine envelopes, gelatin capsules, or any controlled substance."

Appellant's first argument is that, as the lactose and quinine were found in the satchel carried by Davis, there was no evidence to show that they were ever in his possession. Possession of contraband to be criminal, however, need not be exclusive or actual. There may be joint possession and constructive possession, either of which will suffice to sustain a conviction. Md. Annot. Code art. 27, § 277(s); *Garrison v. State,* 272 Md. 123, 128 (1974); *Folk v. State,* 11 Md. App. 508 (1971); *Anderson v. State,* 9 Md. App. 639 (1970). The proximity of the two men — leaving the plane, conversing in the terminal, and attempting to enter the same cab — coupled with the presence of prescription drugs with appellant's name on them in the satchel, more than sufficed to establish a joint or constructive possession of the contraband.

Appellant's second contention is that, absent expert testimony to establish the utilization of lactose or quinine as

a "cutting agent" or as to the significance, if any, of the quantities of those substances found in the satchel, the evidence was insufficient to prove that the intended use was an illegal one.

The State's case was a bit thin. Whether because of complacency or lack of preparation, no evidence was offered to explain the significance of a pound of lactose and nearly a pound and a half of quinine. Such lapses in the record, we caution the prosecutors, are often the progenitor of appellate reversals. Here, however, a fair and rational inference may be drawn sufficient to establish the requisite intent. A pound of lactose in close proximity to more than a pound of quinine — one item of controlled paraphernalia in proximity to another — both in sizeable amounts — does raise an inference that the possession of both is "under such circumstances which reasonably indicate an intention to use [them] for the illegal manufacture, distribution or dispensing of [a] controlled substance", especially in light of the fact that both of these substances have been statutorily recognized as specifically usable for that purpose.

Appellant's third complaint deals with procedure and it requires reversal of his conviction. He alleges that "[t]he record does not reflect that [he] knowingly, voluntarily and with full knowledge of the consequences waived his constitutional right to a trial by jury".[1]

We note that appellant does not allege that he desired a trial by jury or that he was unaware of his right to a jury trial or that he was unaware of what a jury trial entailed. He does not claim that he was denied a trial by jury or that he did not knowingly and voluntarily waive such mode of trial. In short, it is not any constitutional right that he says was violated but

---

1. His full argument as presented in his brief is as follows:

"Subsequent to the Defendant's trial on July 25, 1978, the case of *Biddle v. State,* 24 Sept. Term 1978, was decided by the Court of Special Appeals of Maryland. The *Biddle* case set forth certain criteria which must be satisfied prior to the waiver of an individual's constitutional right to a trial by jury. It is the contention of Appellant that the record does not reflect the necessary conditions precedent to an effective waiver of a trial by jury."

only the requirements of a rule of procedure (Maryland Rule 735) which does, however, have the force of law. He does not assert that he was misled or prejudiced in any way by what occurred or failed to occur. His sole complaint was that the court did not comply with the mandatory requirements of Maryland Rule 735, in particular section d thereof.

Rule 735 d provides:

> "If the defendant files an election to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial with full knowledge of his right to a jury trial and that he has knowingly and voluntarily waived the right. If the court determines otherwise, it shall give the defendant another election pursuant to this Rule."

In *Biddle v. State,* 40 Md. App. 399 (1978), this Court concluded that section d spells out a ritual which the trial judge must follow in accepting the election of a non-jury trial. We concluded that this ritual was a mandatory one — a necessary prerequisite to the commencement of trial before the court. Moreover, drawing from *Boykin v. Alabama,* 395 U. S. 238 (1969), we held that waiver of a jury trial, which of course is implicit in the election of a court trial, must appear affirmatively in the record and that, if it does not so appear, any judgment of conviction rendered must be reversed.

Appellant was originally charged in the District Court of Maryland, a violation of § 287 of art. 27, being a misdemeanor within the concurrent original jurisdiction of that court. *See* Courts article, §§ 4-301 (b), 4-302 (c). The record in the District Court shows that on August 22, 1977, the date scheduled for trial in that court, appellant (either personally or through his counsel, Phillip Sutley, Esq.) elected a jury trial, thereby divesting the District Court of further trial jurisdiction and causing the case to be removed to the Circuit Court. *See* Courts article, § 4-302 (d). The record does not reveal whether appellant personally was in court on August 22, whether the

election of a jury trial was made by him or by his counsel, whether Maryland District Rule 751 requiring that the District Court inform a defendant of his right to trial by jury was complied with, or, if it was, in what manner such compliance was effected. We therefore do not know what information, if any, was actually conveyed to appellant with respect to his right to a jury trial when the matter came before the District Court.

As occurs so often and for a variety of reasons,[2] when the day of reckoning finally came in the Circuit Court, nearly a year later and after two postponements, appellant (or his lawyer, the same Mr. Sutley) decided to forego the jury trial that caused the case to be removed in the first place. When the case was called, Mr. Sutley stated to the court:

> "Your Honor, I'm Phillip M. Sutley, representing Mr. Butler. His case originally was a jury trial prayed in the District Court. Since that time Mr. Butler *has waived* his right to have this case tried before a jury.

---

2. In FY 1978, nearly 5,600 defendants prayed a jury trial in the District Court. *See Statistical Abstract, Annual Report of the Maryland Judiciary (1977-78),* Table DC-3, p. 70. Most of these elections (3,775) occurred in Baltimore City. Indeed, the frequency of jury elections in the District Court has increased so dramatically in the City that, in January, 1978, they accounted for 46% of the entire Criminal Court of Baltimore pending caseload and 40% of the number of defendants then awaiting trial in that court. Three years earlier, cases transferred by reason of jury trial elections comprised only 21% of the overall pending caseload and but 19% of the defendants awaiting trial. *See Report of Special Committee to Study Supreme Bench Caseload Increase of District Court Warrant Cases and De Novo Appeals (1978),* Appendix A. According to that Report, however, *less than 3% of the defendants praying jury trials actually are tried by juries when these cases reach the Criminal Court,* a fact which led the Committee to suggest that "a desire for trial by jury is not the reason for praying the same in the vast majority of cases." *Id.,* p. 3.

Based upon its review of the data and the general expertise of its members, the Committee suggested nine reasons, other than a sincere desire for a jury trial, to explain this increase. They include the simple desire to gain a postponement, to avoid the particular judge sitting in the District Court, the hope or expectation (often realized) of a favorable plea bargain, and delay in the ultimate reckoning. *See also Report of the State's Attorney of Baltimore City, January 1975 through June 1978,* pp. 28-30. These motives are not necessarily peculiar to Baltimore City.

There is no evidence, of course, that appellant's course of action in this case was influenced by any of these collateral motives. But, as already noted, neither is there any evidence that he really wanted a jury trial.

So we're here today, non-jury trial, enter a plea of not guilty." (Emphasis supplied.) [3]

The court made no response to this statement, but, accepting it as a valid change of election from jury to court trial, proceeded to take testimony.

It is evident here, as it was in *Biddle,* that the court made no effort whatever to comply with section d of Rule 735. It obviously made no inquiry of appellant on the record. Neither is there any indication in the record that the court knew what had transpired in the District Court. Accordingly, there was no basis upon which it could have reasonably concluded that appellant had full knowledge of his right to a jury trial and that he was knowingly and voluntarily waiving that right.

The State calls our attention to section e of Rule 735 dealing specifically with cases transferred from the District Court by reason of a request for jury trial. That section provides in such instances that the defendant shall be tried by a jury and may not elect a court trial except with leave of court for good cause shown. This section does not, however, diminish the application or effect of section d. It simply imposes an additional requirement on the court not to permit a court trial without a further additional showing of good cause for the change in election.[4]

---

3. There is no indication in the record of any prior waiver or attempt at waiver of the previously elected jury trial. In particular, the record does not indicate that appellant ever signed a written waiver form of the type set forth in section b of Rule 735. It is not clear, therefore, what counsel meant when he said that his client "has waived" his right to jury trial.

4. By Order dated November 16, 1978, the Court of Appeals substantially amended Rule 735. *See* 5 Md. Reg. 1787, 1788 (12/1/78). The Order provides that the changes "shall take effect and apply to all proceedings commenced on and after January 1, 1979, and *insofar as practicable,* to all proceedings then pending." (Emphasis supplied.) Section e of the previous Rule was repealed, and, in its place, the new Rule states:

"1. Change of Court Trial Election.

Subject to the provisions of section d, after an election for a court trial is made, the court may not permit the defendant to change his election except upon motion made prior to trial and for good cause shown. In determining whether to allow a change in the election, the court shall give due regard to the extent, if any, to which trial would be delayed by the change.

"2. Change of Jury Trial Election.

After a jury trial has been elected pursuant to this Rule or in

Accordingly, the mandatory requirements of section d being both applicable and unsatisfied, the court had no authority to proceed with trial and the conviction must therefore be reversed.

> *Judgment reversed; case remanded to the Circuit Court for Anne Arundel County for retrial; Anne Arundel County to pay the costs.*

---

the District Court, the defendant may waive his right to a jury trial at any time up to 72 hours prior to the time of trial. The court may allow a change in the election of a jury trial at any time before trial upon motion and for good cause shown."

Section d was amended by substituting the word "elects" for the phrase "files an election" as it appears in the first line. At least because of the 72-hour requirement in section e which, of course, could not be complied with in this case, we do not believe it "practicable" to apply the new Rule in this proceeding, notwithstanding its pendency on January 1, 1979, and shall therefore decide this case on the basis of the Rule as it existed prior to the most recent change — *i.e.,* as it stood at the time of trial.