## HERBERT DATCHER *v.* STATE OF MARYLAND

[No. 698, September Term, 1978.]

*Decided June 7, 1979.*

The cause was argued before MOYLAN, MASON and MACDANIEL, JJ.

*Nancy Louise Cook, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alice G. Pinderhughes, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Howard Grossfield, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The Appellant, Herbert Datcher, was convicted in the Criminal Court of Baltimore of Daytime Housebreaking. Upon this appeal, he raises five contentions:

    1) that he was convicted of a crime with which he had not been charged;

    2) that he did not effectively waive his right to trial by jury;

    3) that he was denied the effective assistance of counsel;

    4) that he was denied the right to confront the witnesses against him; and

    5) that he was erroneously ordered to make restitution.

## The Use and Abuse of Language

The Appellant's first contention deals with a very specific problem but it illuminates a wider field of troubles as we deal with the myriad complaints raised by those who lose at the trial level — the opportunistic tendency, generally long after the fact, to seize upon a slip of the tongue or an informal usage and to treat it as something chiseled in granite.

The deputy clerk who made the docket entries in this case recorded the Appellant as having been convicted of Housebreaking in violation of Art. 27, Sect. 30. The Appellant, on the other hand, strenuously contends that he was convicted of Breaking and Entering in contravention of Art. 27, Sect. 31A. The question arises of whether they both attended the same trial.

The Appellant, along with his brother Rufus as a

codefendant, went to trial before Judge Hilary Caplan on a four-count indictment. Those counts were, respectively:

1) Daytime Housebreaking,
2) Roguery and Vagabondage,
3) Larceny, and
4) Receiving Stolen Goods.

Everything in this case took place within the limited context of that four-count indictment. Meaning must be derived from the context in which words are used as well as from the naked words themselves. Within the clear context of this trial, the evidence was legally sufficient to convict the Appellant on the greatest count — Daytime Housebreaking — and Judge Caplan so convicted him.

Judge Caplan thoroughly summed up the evidence and correctly assessed the trial contest as one of competing credibilities. He found a key State's witness to be credible and he found the Appellant to be unworthy of belief. He concluded his rendering of the verdict with the following words:

"For that reason I find the defendants, both of them, guilty of the charge of breaking and entering."

Upon so insubstantial a foundation, the Appellant erects the argument that he was convicted of a crime with which he was never charged. He contrasts Daytime Housebreaking under Section 30 (b) with Breaking and Entering under Section 31A and asserts that the conviction must have been for the latter. We note at the outset that no exception was taken when the verdict was rendered nor any clarification called for. There is, therefore, nothing before us for appellate review. *Green v. State,* 23 Md. App. 680, 685; Maryland Rule 1085.

In this case, however, we do not hesitate to address the merits (or palpable lack thereof) in the hope of foreclosing future, deliberate distortions of meaning. Reading the clear and unambiguous rendering of the verdict in full context, we decline to credit a strained and hypertechnical interpretation which would be a rank absurdity. We take judicial notice of

the fact that the word "burglary" and the phrase "breaking and entering" are both used frequently, by trained lawyers and jurists as well as by laymen, as generic and sometimes interchangeable terms to refer to the whole family of burglary-related offenses, as well as to individual species within that broad genus. The phrase "breaking and entering" was unquestionably used in that off-hand fashion in this case and it was used for the clear and unambiguous purpose of designating the first count (which is part of the "breaking and entering" or "burglary" family), in contradistinction to those counts charging Roguery and Vagabondage, Larceny and Receiving Stolen Goods (which are not of that family). We cannot conceive of any intelligent listener or reader giving any other meaning to so clearly communicated a message. Identification need only be specific rather than generic when one is distinguishing between species rather than between genera. The process of justice is ill-served when disappointed litigants hang critically on every spontaneous word as if it had bubbled from the Earth at Delphi.

### The Maryland Rule of Constitutional Waiver Plus

Rulemakers frequently suffer a chronic affection for catechisms and for the spreading of catechisms upon the record in the benevolent hope that once everyone has reduced every jot and tittle to unflagging memory and dutiful execution, litigation will be wondrously diminished. The paradox is that, at least in the intermediate range, the device which was intended to deliver us from litigation, instead cranks out seemingly endless litigation. Thus has it been with Maryland Rule 735. The pertinent part thereof for present purposes is 735 d:

> "If the defendant elects to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial with

full knowledge of his right to a jury trial and that
he has knowingly and voluntarily waived the right.
If the court determines otherwise, it shall give the
defendant another election pursuant to this Rule."

We first came to grips with Rule 735 d in October, 1978,
with *Biddle v. State,* 40 Md. App. 399, 392 A. 2d 100. Since
March, 1979, we have engaged it on nine additional published
occasions: *Butler v. State,* 41 Md. App. 677, 398 A. 2d 514;
*Countess v. State,* 41 Md. App. 649, 398 A. 2d 806; *McCoy v.
State,* 41 Md. App. 667, 398 A. 2d 1244; *Fairbanks v. State,*
42 Md. App. 15, 398 A. 2d 814 (1979); *Tucker v. State,* 42 Md.
App. 103, 399 A.2d 931 (1979); *Jones v. State,* 42 Md. App.
209, 400 A. 2d 1 (1979); *Harris v. State,* 42 Md. App. 248, 400
A. 2d 6 (1979); *Watkins v. State,* 42 Md. App. 349, 400 A. 2d
464 (1979) and *Fisher v. State,* 42 Md. App. 515, 400 A. 2d
1159 (1979). In the course of holding that there was
noncompliance with Rule 735 on six of these now ten
occasions and that there was compliance on four others, we
have reduced a wide field of initial doubt by bracketing the
critical target area with reasonably pinpoint precision.

Aids to construction are now at hand. As Judge Thompson
pointed out in *Harris v. State, supra,* "The obvious purpose
of this in-court inquiry is to show affirmatively on the record
that the defendant's constitutional right to a jury trial was
voluntarily and knowingly waived." In *Fairbanks v. State,
supra,* Judge Lowe looked, by way of analogy, to *Davis v.
State,* 278 Md. 103, 107-108, and concluded that the
satisfaction of Rule 735 does not require "that a precise rubric
or litany must be followed to effect a waiver of a
constitutional right, such as the right to trial by jury." 398
A. 2d at 817. He reasoned that substantial compliance is the
ultimate requirement and that "[c]ommon sense is the
criterion." These guiding principles have found expression in
the growing body of case law.

In *Harris v. State, supra,* Judge Thompson probed "the
required scope and extent of the section d inquiry." In *Biddle*

*v. State, supra,* we struck down the court trial election because "the record was devoid of any indication that the defendant knew of his right to a jury trial or participated in the election of a court trial. It merely showed that defense counsel requested a court trial at the arraignment, in the defendant's presence." *Harris v. State.* The failing in *Biddle* was twofold. In the first place, there was no showing on the record, by direct inquiry of the defendant (by court or counsel) or by indirect representation by counsel, that the election of trial mode was actually made or acquiesced in by the defendant personally. In the second place, even assuming a personal election by the defendant, there was no showing, by direct inquiry of the defendant or by representation by counsel, that the election of a court trial was made with knowledge of the alternative right to a jury trial.

In *Butler v. State, supra,* we also held that there was noncompliance with Rule 735. A dimension was added by way of implication. In *Butler,* the only thing that transpired before the Circuit Court was the following representation by counsel:

> ". . . His case originally was a jury trial prayed in the District Court. Since that time Mr. Butler *has waived* his right to have this case tried before a jury. So we're here today, non-jury trial, enter a plea of not guilty." (Emphasis supplied)

The court made no further inquiry but proceeded immediately to trial. The analysis of Judge Wilner for this Court attached significance to the fact that Butler had earlier elected a jury trial when he was first before the District Court. We stressed the fact that the District Court record did not show 1) "whether the election of a jury trial was made by him or by his counsel," 2) whether Butler "personally was in court" when the jury trial was prayed, 3) whether "the District Court inform[ed Butler] of his right to trial by jury," and 4) "what information, if any, was actually conveyed to [Butler] with respect to his right to a jury trial when the matter came before the District Court." The implication of this discussion is that if there had been spread upon the record in the Circuit

Court evidence that upon an earlier occasion in the District Court the defendant had been fully informed of his right to trial by jury, that earlier knowledge would be deemed to remain with the defendant and would demonstrate that his later election of a court trial was, indeed, an informed and knowledgeable election. Our decision in *Butler* hinged, in part, upon the failure of the record to show such earlier knowledge:

> "Neither is there any indication in the record that the court knew what had transpired in the District Court. Accordingly, there was no basis upon which it could have reasonably concluded that appellant had full knowledge of his right to a jury trial and that he was knowingly and voluntarily waiving that right."

In *Tucker v. State, supra,* there was no even colorable compliance with Rule 735 d. Two written elections for a court trial had been filed but there was no inquiry upon the record of any sort (of anybody) to determine whether the election was "with full knowledge of his right to a jury trial" or that the defendant had "knowingly and voluntarily waived the right."

In *Harris v. State* itself, the critical failure of compliance was that "the court did not address the appellant and the appellant was given no opportunity to speak." To be sure, Judge Thompson had earlier stressed:

> "First, it is not necessary that the entire inquiry always be conducted on a person to person basis between the judge and the defendant. Statements by counsel in which the defendant has clearly acquiesced may be sufficient."

In *Harris,* however, there was "no basis in this record for concluding that appellant acquiesced in any on the record explanation by counsel, as in *McCoy, supra,* or that he affirmed the sort of recital shown in *Fairbanks, supra.*" Whether the inquiry of the defendant be direct or indirect, the rule indubitably requires that some inquiry be made "of the defendant."

Our holding of noncompliance with Rule 735 d in *Watkins v. State, supra,* dealt with a situation virtually on all fours with *Biddle.* The election of a court trial was made by defense counsel. There was no inquiry of any sort as to 1) whether the election was that of the defendant himself or 2) even if so, whether it was made with knowledge of the right to trial by jury.

Our most recent holding of noncompliance was in *Fisher v. State, supra.* The critical phrase from Rule 735 d in that case was "with full knowledge of his right to a jury trial." Judge Lowe summed up our earlier case law pointing out that it is not "necessary to spell out the various aspects of a jury trial, such as the fact that all jurors must be convinced beyond a reasonable doubt before he can be convicted. It is sufficient that the record affirmatively indicates that the defendant knew that a jury trial was available." We then added, however, the partial qualification that the defendant must know not simply that a jury trial is available but "must also understand the general nature of a jury trial when he elects to be tried by the court." We there concluded:

> "While it is clear that appellant knew that a jury trial was available, and he was waiving it, there is no evidence of record that he did so 'with full knowledge' of it as required by Md. Rule 735 d. The record does not show that he understood that which he was waiving, *i.e.,* 'the general nature of a jury trial.' *Harris, supra.* Sl. Op. at 5. We must reverse, and remand for retrial."

Four of our decisions weigh upon the other pan of the balance scales. In *Countess v. State, supra,* inquiry was made of the defendant personally and it was not disputed that the election of a court trial was made by the defendant. The critical issue there was the "knowing" quality of the waiver. In finding adequate compliance with Rule 735 d, Judge MacDaniel articulated two factors of significance. The defendant's representation that he understood that he had a right to a jury trial and "that his lawyer had fully explained his right to him" was a significant affirmative factor even

without any detail being spelled out. Of even greater significance was the fact that the defendant had earlier signed a form electing trial by jury. That he later changed his election to that of a court trial was not significant. The significant thing was that his signature was affixed to the bottom of a form which recited the right "to be tried by a jury of twelve persons," the requirement of unanimity for a verdict and the fact that guilt must be found by all jurors "beyond a reasonable doubt." This form was of critical probative force in our decision that the subsequent election was one made with requisite knowledge. We there concluded:

> "A review of the record in this case convinces us that the mandatory requirements of Rule 735 d have been satisfied. Both the appellant and his attorney signed the form which is part of the record, and it contains all of the information required by Section b. . . . The signed form and the in-court responses to questioning show that the appellant made his election of a court trial with full knowledge of his right to a jury trial and that he knowingly and voluntarily waived the right."

In *McCoy v. State, supra,* we held that although the waiver of a jury trial must be made by the defendant, the announcement of the waiver may come through defense counsel. In *McCoy,* the court, on the record, informed three defendants that they had a right to a trial by jury and inquired of them as to their election. The three defendants never spoke personally but their respective lawyers did speak for them in their presence. The first lawyer informed the court that his client was aware of the right to a jury trial, aware that a jury consists of twelve persons, aware of the unanimity requirement and that his client elected to be tried by the court. The other two lawyers, in a more abbreviated representation to the court, responded that the situation with respect to their clients was the same. In finding that the rule had been complied with, we said, at 398 A. 2d 1248:

> "In the present case, the court informed the appellants that they had a right to a trial by jury and

asked each of them whether it was waived. In response, each of the attorneys explained his client's understanding of his right and indicated that it was waived.

. . .

In addition, while the decision to waive the right to a jury trial must be made by the defendant, it may be voiced by his counsel.

. . . Similarly, counsel's explanation of his client's understanding of his rights acts as the client's own explanation provided that the client acquiesces.

. . . [C]ounsel for each appellant announced the waiver of a jury trial and explained his client's understanding of his right. At no time did the appellants, all of whom were present, voice any objection."

Just as *McCoy* indicated that the response may be made by counsel, *Fairbanks v. State, supra,* established that the inquiry may be conducted by counsel. The critical exchange in *Fairbanks,* held by us to be sufficient to show compliance, was set forth in that opinion at 398 A. 2d 815:

"Appellant raised no objection below to the waiver of trial by jury. In fact, his attorney volunteered that:

'Mr. Fairbanks understands what a jury trial is. He understands he has the absolute right to have a jury trial and wishes to waive that right and be tried by the Court here today. Is that correct, Mr. Fairbanks?'.

to which appellant replied:

'Yes, sir, it is.' "

Our holding, at 398 A. 2d 817, was:

"That rule requires only that the court 'determines, after inquiry . . . on the record' that the election was knowing, voluntary, and with full knowledge of defendant's rights. It does not require that the

'inquiry' be by the court, only that it be on the record, to substantiate the court's determination."

The necessary companion holding in *Fairbanks* was that the representation made by counsel, and adopted by the defendant, was sufficient to show that the defendant understood the general nature of a jury trial. In *Harris v. State, supra,* we characterized the *Fairbanks* holding in this regard in the following terms:

"[D]efense counsel volunteered that his client understood the nature of a jury trial, that he knew he had a right to such a trial, and that he wished to waive that right and be tried by the court. Counsel then asked his client whether that recital was correct and the defendant replied that it was. This was held to be sufficient compliance with Rule 735 d, although the record did not show that the defendant had been informed of the various incidents of a jury trial as spelled out in section b."

In *Jones v. State, supra,* filed the day before our opinion in *Harris v. State, supra,* we focused in again on the establishment of the understanding of the general nature of a jury trial and again looked to *Fairbanks v. State* as the bench mark. The critical exchange in *Jones,* in this regard, was:

"Mr. Levin: Your Honor, we would waive the reading of the criminal information in case number 4620.

Mr. Jones, I've advised you, sir, that these are serious charges and you do have the right to a jury trial in this matter. Do you understand that?

The Defendant: I understand.

Mr. Levin: You have to speak up so —

The Defendant: I understand.

Mr. Levin: Do you understand what the jury trial is?

The Defendant: I understand."

The defendant there argued "that this election was not made with 'full knowledge' of his right to a jury trial because he was not informed of the basic elements of a jury trial as described in the form contained in Section b of the Rule." We held that the exchange was sufficient to show compliance with the Rule,[1] measured by the standard established in *Fairbanks:*

> "The facts of the present case are almost indistinguishable from those of *Fairbanks.* There, Fairbanks' attorney merely asserted that his client understood what a jury trial was, that he had an absolute right to have a jury trial, and that he wished to waive that right and be tried by the court. When asked whether that recital was correct, Fairbanks replied in the affirmative. On those facts we held that there had been compliance with Rule 735. Consistency with our decision in *Fairbanks, supra,* dictates that we reject appellant's argument on this issue."

The synthesis that emerges from this mushrooming growth of new case law is that the face of the record must reveal that:

1. AN INQUIRY WAS MADE OF THE DEFENDANT.

    (It may be made by the judge or by counsel or by anyone else, for that matter, but it must be made *of the defendant.*)

2. THE ELECTION OF A COURT TRIAL WAS MADE BY THE DEFENDANT.

    (The mechanism for communicating this election is not invariable. It may be voiced by the defendant; it may be indicated in

---

1. Our earlier holding in *Countess v. State,* to the effect that the signing and reading of the election form set out in Rule 735 b represents solid evidence that the subscribing defendant thereby understands the attributes of a jury trial, was reinforced by the following strong dictum in *Jones:*

"A defendant reading that form would be apprised of his right to a jury trial, that a jury consists of twelve persons, and that in order to be convicted in a jury trial all twelve jurors must find a defendant guilty beyond a reasonable doubt."

writing pursuant to Rule 735 b; it may be voiced by counsel and then adopted by or acquiesced in by the defendant. It needs to be established, however, that the election, however communicated, was actually made *by the defendant.*)

3. THE ELECTION WAS MADE WITH KNOWLEDGE OF THE RIGHT TO TRIAL BY JURY AND WITH SOME AWARENESS OF THE GENERAL NATURE OF A JURY TRIAL.

(The ways of establishing this knowledge again are variable. A detailed knowledge of the attributes of trial by jury is not required. What is required is some indication that there is a general understanding of the nature of a jury trial.)

Initially, we have no difficulty whatsoever with the state of the record to satisfy the first two of the above criteria. Judge Caplan made direct inquiry of both the appellant and his codefendant brother. The appellant, and his brother, personally indicated their election of trial by court in preference to trial by jury:

"THE COURT: Very well, Gentlemen, you both understand you are entitled to a jury trial. It is my understanding you know what a jury is and you give up your right to a jury trial, is that correct?

MR. RUFUS DATCHER: Yes, sir.

MR. HERBERT DATCHER: Yes, sir."

With respect to the satisfaction of the third criterion, the State is twice blessed. There is initially the following pertinent portion of the above-quoted colloquy:

"THE COURT: . . . It is my understanding you know what a jury is . . . is that correct?

. . . . .

MR. HERBERT DATCHER: Yes, sir."

Although that may well be enough, our present holding in this

regard rests upon a broader predicate. On August 16, 1977, the appellant signed a form entitled "Plea and Election of Court Trial or Jury Trial." His signature was witnessed by Assistant Public Defender Earl Carey, who also signed the form. The following four lines, of the twelve printed lines above the appellant's signature, are of pertinence here on the issue of knowledge:

"I know that I have a right to be tried by a jury of 12 persons or by the court without a jury. I am aware that before a finding of guilty in a jury trial all 12 jurors must find that I am guilty beyond a reasonable doubt."

Appropriate inquiry was made of the appellant on the record. The appellant elected trial by court. The inquiry revealed that the appellant made this election with adequate knowledge of his right to trial by jury and with an adequate understanding of the general nature of that right.

The appellant also contends that he was denied the effective assistance of counsel. This issue was not raised or decided below and is not properly before us. Maryland Rule 1085; *Boswell v. State,* 5 Md. App. 571.

The appellant also urges upon us that he was denied his Sixth Amendment right to confront his accusers when his lawyer and the State stipulated to the testimony of Jessie Goudy, the victim of the breaking and entering.[2] The point was not raised or decided below and has not been preserved for appellate review. Maryland Rule 1085.

It is with ill grace that the appellant makes his final contention. After having been convicted of daytime housebreaking, the appellant was given a significant "break" when his three-year sentence was suspended and he was placed on one year's probation with an order to pay court costs and to make restitution in the amount of $425. Taken from the victims as a result of the housebreaking was

---

2. We note that we here employ the same informal usage for which the appellant, in his first contention, sought to pinion Judge Caplan. *Quod Erat Demonstrandum.*

property of a total value of $1890. Once again, the exception to the order of restitution was not made or ruled upon below and is not preserved for appellate review. Maryland Rule 1085.

*Judgment affirmed; costs to be paid by appellant.*